# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Nicholas, 2013 IL App (1st) 103202**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTONIO NICHOLAS, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-10-3202 |
| Filed | March 27, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although defendant's affidavit asserting a claim of actual innocence was insufficient to allow defendant to proceed on his successive postconviction petition, his allegation that he was coerced into confessing to participating in a fatal shooting was sufficient to establish the cause and prejudice required to remand the cause for second-stage proceedings on his successive petition. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 91-CR-16373; the Hon. Matthew E. Coghlan, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded with instructions. |

Counsel on        Michael J. Pelletier, Alan D. Goldberg, and David C. Holland, all of State
Appeal            Appellate Defender's Office, of Chicago, for appellant.

                     Stuart A. Nudelman, Special State's Attorney, of Chicago (Myles P.
O'Rourke, Andrew N. Levine, Rafael A. Bombino, and Brian J.
Stefanich, Special Assistant State's Attorneys, of counsel), for the People.

Panel              JUSTICE PIERCE delivered the judgment of the court, with opinion.
Presiding Justice Neville and Justice Hyman concurred in the judgment
and opinion.

**OPINION**

¶ 1     Defendant appeals from the circuit court's denial of his request for leave to file a successive postconviction petition. In this court, defendant argues that the trial court erred in denying him leave to file his petition because: (1) his allegation that his confession was physically coerced established the requisite cause and prejudice necessary to overcome the bars of *res judicata* and waiver; and (2) he made a colorable claim of actual innocence supported by an affidavit of an eyewitness. We find that petitioner's successive petition should have been allowed because he has established cause and prejudice for failing to raise the issue in an earlier proceeding. Defendant failed to establish a colorable claim of actual innocence supported by the submitted affidavit of an eyewitness. For the following reasons, we affirm the judgment of the circuit court in part, and we reverse the judgment of the circuit court in part and remand with directions.

¶ 2                               BACKGROUND

¶ 3     Defendant, along with codefendant David Washington, was charged in connection with a shooting that occurred on June 9, 1991, which resulted in the death of Kathryn Miles and the injury of Eric Burgin, Sylvester Porch and Billy Warren. We will discuss only those facts relevant to the disposition of this appeal.

¶ 4     Prior to trial, defendant filed a motion to suppress his statement to police based on alleged physical and psychological coercion. Defendant testified that he was arrested for the offense in the instant case on June 11, 1991, and was handcuffed by Detective O'Brien of the Chicago police department. Detective O'Brien "smacked" defendant in the face when defendant told Detective O'Brien that he did not know anything about the shooting. Defendant was taken to Area 3 headquarters and was placed in an interview room with Detectives O'Brien, Stehlik and other officers. When defendant stated that he did not know anything about the shooting, Detective O'Brien punched defendant in the middle of the chest with such force that he was knocked to the ground. While he was on the ground, the other

-2-

detectives hit and kicked him. One of the officers had a red bat with keys on the end, but defendant did not know whether he was beaten with the bat. The beating lasted about 20 to 30 minutes.

¶ 5 At some point during the beating, another unnamed officer entered the room and told the detectives to leave. This officer told defendant the beatings would stop if he cooperated. Defendant agreed to cooperate and was shown Gregory Reed's statement. Defendant and the officer went over Reed's statement for about 30 minutes. Later, defendant gave a court-reported statement admitting his involvement. Defendant did not complain about the beating because Detective O'Brien was present when he gave the statement. Similarly, defendant did not complain of being beaten to the intake paramedic at Cook County jail because police officers were present. Defendant eventually complained to a paramedic that he had been beaten, and X-rays were taken of his torso on July 19, 1991. No fractures were revealed.

¶ 6 David Washington testified that he was also arrested on June 11, 1991, by Detective O'Brien for his involvement in this case. Washington was taken to Area 3 and handcuffed to a wall. Detective O'Brien yelled at him and threatened to hit him with a little red bat with keys on it. Detective O'Brien then pulled Washington's overalls halfway down his body and took out an electrical device and told Washington that he would shock his genitalia if he did not cooperate. Washington gave a court-reported statement and did not make any complaints in his statement about being mistreated by the police.

¶ 7 Detectives O'Brien and Stehlik denied that they ever hit or threatened defendant. Assistant State's Attorney (ASA) Brian Grossman testified that he spoke with defendant before defendant gave his court-reported statement and defendant was given his *Miranda* rights and did not complain of being abused. ASA Charles Burns testified that he was present for Washington's statement and that he never complained about being threatened.

¶ 8 Based on a representation made by defense counsel, the court agreed to have Detective O'Brien's Office of Professional Standards (OPS) records subpoenaed and returned to the court for an *in camera* inspection. The court later tendered several of the OPS files to defense counsel. Thereafter, defense counsel called Maurice Lane to testify. Lane testified that Detective O'Brien physically abused him and threatened him in an attempt to get Lane to confess to the murder of his sister.

¶ 9 The court denied defendant's motion to suppress, finding defendant's statements were not the product of coercion and there was no evidence to support his allegations of abuse.

¶ 10 At trial, defendant's statement was published to the jury. In his statement, defendant explained that on June 9, 1991, he was at his friend Greg's house with Dave and some other friends when George arrived. After he spoke with George, Greg asked defendant if he was interested in doing a "stain," meaning a stickup. George offered to fix defendant's car if defendant would shoot some men who had "jumped on him."

¶ 11 Defendant, George, Greg and Dave then discussed the logistics of the shooting. They decided that defendant and Dave would shoot the men who "jumped on" George, while Greg watched their backs. Defendant was shown who his targets were.

¶ 12 The group drove to an alley near the crime scene. Defendant carried a .380 automatic gun. Defendant, Greg and Dave walked from the car to 66th and Wolcott and stood by a store

on the corner. Defendant fired about five shots toward 65th Street at three men on the corner. Dave turned and started shooting at the same men that defendant had targeted.

¶ 13    Jermaine Averhart, an eyewitness to the shooting on June 9, 1991, testified on behalf of the State. Averhart observed three men near the store at the corner of 66th and Wolcott. The corner was lit by streetlights. Two of the men raised their guns and began shooting north, in the direction of a play lot on 65th Street. Then, one of the men turned and shot in the other direction and the other shooter followed. Averhart identified defendant and David Washington in a lineup.

¶ 14    The testimony of John Buchanan, an eyewitness, and Eric Burgin, a victim, substantially corroborated Averhart's testimony. Buchanan also testified that during the day on June 9, 1991, he observed a fight between George, Jerome and David Jenkins.

¶ 15    Detective James O'Brien testified that on June 11, 1991, he and his partner interviewed Gregory Reed at the police station. Following that interview, he arrested defendant. Detective O'Brien interviewed defendant at 11 p.m. on June 11, 1991, after informing defendant of his rights. Defendant agreed to give a court reported statement. Assistant State's Attorney Brian Grossman corroborated Detective O'Brien's testimony that defendant voluntarily agreed to give a court-reported statement.

¶ 16    Detective O'Brien testified regarding the weapons and pieces of weapons that were recovered following the shootings. After David Washington was arrested, he led the police to several locations, including areas along the lake, where officers recovered several parts of weapons and ammunition, including a .380 automatic and eight cartridges, the barrel of a .22-caliber Inter-Tech semiautomatic gun, a pistol grip and 100 rounds of ammunition.

¶ 17    Detective James Treacy, a firearm expert, testified that the bullet removed from Kathryn Miles was fired from the .380-caliber automatic weapon recovered by the officers.

¶ 18    After the State rested, the defendant called David Jennings to testify. Jennings stated that on June 9, 1991, his friends fought with a man named Jerome and his friend George. George attempted to fire a gun during the fight, but it failed to discharge. George had driven away threatening that he would be back.

¶ 19    William Friedman, an investigator with the public defender's office, testified that he interviewed Jermaine Averhart on April 23, 1993. During that interview, Averhart told Friedman that he saw defendant running with a gun but did not remember if he saw defendant shooting.

¶ 20    Defendant testified that in June of 1991, he was working for "Stevio" Movers. On June 9, 1991, he went to Greg Reed's house to watch a basketball game. When George arrived, he asked defendant to go to 66th and Wolcott to pick up Eric because George had "got into it with some guys there earlier." Defendant testified that he did not have a gun. After George dropped him off near 66th Street, he heard some men say, "there's George," and they began shooting.

¶ 21    Defendant also testified that after the police officers arrested and questioned him, they began hitting and kicking him until another detective came in and told them to stop. The detective announced that he had a statement from Gregory Reed. Defendant testified that the officers coerced him into giving a statement and that he merely repeated Reed's statement.

When defendant arrived at the jail, he asked to see a doctor. He testified that no one examined him until months later.

¶ 22    After hearing all of the evidence, the jury found defendant guilty of one count of first degree murder, three counts of attempted first degree murder, three counts of aggravated battery with a firearm and one count of conspiracy to commit first degree murder. The trial court sentenced defendant to two consecutive prison terms of 60 years for first degree murder and 25 years for attempted first degree murder.

¶ 23    On direct appeal, defendant argued that: (1) the trial court erred in refusing to instruct the jury on the issue of manslaughter; (2) the State failed to prove him guilty beyond a reasonable doubt; (3) the State violated *Brady* when it failed to disclose an informant's statement; (4) the State's improper closing argument denied defendant a fair trial; and (5) the trial court abused its discretion in giving the jury a *Prim* instruction. We affirmed defendant's conviction on May 2, 1996. *People v. Nicholas*, No. 1-93-4215 (May 2, 1996) (unpublished order pursuant to Supreme Court Rule 23).

¶ 24    Defendant filed a *pro se* postconviction petition on September 19, 2007, wherein he alleged the 2006 Report of the Special State's Attorney (2006 Report) corroborated his claim that his confession was coerced and that the evidence, apart from the confession, was insufficient to support his convictions. Specifically, defendant claimed that the 2006 Report established that "numerous arrestees complained of being beaten and/or tortured by Detective O'Brien and other detectives at Area 3." In addition, defendant noted that the 2006 Report concluded that because Commander Jon Burge abused suspects at Areas 2 and 3, "it necessarily follows that a number of those serving under his command recognized that, if their commander could abuse persons with impunity, so could they." Defendant attached several pages of the 2006 Report to his petition.

¶ 25    On November 27, 2007, the circuit court summarily dismissed defendant's *pro se* petition. The court found that defendant had waived his coercion claim because the issue was not raised on direct appeal. On appeal of the denial of his postconviction petition, appellate counsel filed a motion to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and averred that there were no meritorious issues to be presented on appeal. Counsel stated that the 2006 Report did not add to or detract from defendant's coercion claims. Defendant responded by arguing that the compact disc of the 2006 Report contained details of the allegations of abuse against Detective O'Brien corroborative of his claims but that defendant was unable to obtain the compact disc due to prison regulations. This court reviewed the record, counsel's brief and defendant's response and found that there were no meritorious issues on appeal and affirmed the judgment of the circuit court. *People v. Nicholas*, No. 1-08-0670 (Dec. 17, 2008) (unpublished order pursuant to Supreme Court Rule 23).

¶ 26    Defendant also filed a *pro se* petition for a *writ of habeas corpus* in the United States District Court, Northern District of Illinois. In the petition, defendant alleged that he was beaten by Chicago police officers prior to giving his statement and that the 2006 Report corroborated his allegations. The district court dismissed defendant's petition in August 2009, finding that the one-year period of limitations had run by the time defendant had filed his petition.

¶ 27    Defendant filed the instant *pro se* successive postconviction petition on December 14, 2009, wherein he raised the following claims: (1) his confession was coerced and newly discovered evidence supported this claim; and (2) he was actually innocent and provided an affidavit of an individual who allegedly supported this claim. The circuit court denied defendant leave to file his successive petition. The court found that defendant failed to establish the requisite cause and prejudice necessary to be granted leave to file a successive postconviction petition. Specifically, the court found that defendant had claimed in his prior postconviction petition that his confession was coerced based on the conduct of Detective O'Brien, whereas in this petition defendant raised the exact same claim with the additional detail of now being able to name the previously unnamed "good cop": Detective McWeeny. The court concluded that defendant's discovery of Detective McWeeny's name did not constitute new evidence. Similarly, the court rejected defendant's claim of actual innocence based on the affidavit of Delbert Heard. While the court stated that the content of his affidavit may be considered newly discovered, it was not of such a nature that would entitle him to relief under the Act. It is from the circuit court's ruling that defendant now appeals.

¶ 28                                                    ANALYSIS

¶ 29    Defendant first argues that the circuit court erred when it denied him leave to file his *pro se* successive postconviction petition because his well-pled allegations of physical coercion satisfied the cause and prejudice test.

¶ 30    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)), allows prisoners to collaterally attack a prior conviction and sentence where there was a substantial violation of his or her constitutional rights. *People v. Gosier*, 205 Ill. 2d 198, 203 (2001). In order for a defendant to successfully challenge a conviction or sentence pursuant to the statute, he or she must demonstrate that there was a substantial deprivation of federal or state constitutional rights. *People v. Morgan*, 187 Ill. 2d 500, 528 (1999).

¶ 31    The Act contemplates the filing of only one postconviction petition. *People v. Evans*, 186 Ill. 2d 83, 89 (1999); 725 ILCS 5/122-1(f) (West 2010). Consequently, all issues actually decided on direct appeal or in an original postconviction petition are barred by the doctrine of *res judicata* and all issues that could have been raised on direct appeal or in an original postconviction petition, but were not, are waived. *People v. Blair*, 215 Ill. 2d 427, 443 (2005); 725 ILCS 5/122-3 (West 2010).

¶ 32    Successive postconviction petitions are only allowed when fundamental fairness so requires or when a defendant can establish cause and prejudice for failing to raise the issue in an earlier proceeding. *People v. Lee*, 207 Ill. 2d 1, 4-5 (2003). The cause-and-prejudice test is the analytical tool that is to be used to determine whether fundamental fairness requires that an exception be made to section 122-3 (725 ILCS 5/122-3 (West 2010)), so that a claim raised in a successive petition may be considered on its merits. *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002); 725 ILCS 5/122-1(f) (West 2010). A defendant must meet a "more exacting" or "substantial" showing of cause and prejudice to be granted leave to file a successive postconviction petition. *People v. Edwards*, 2012 IL 111711, ¶¶ 22, 32. A "gist" of a claim of cause and prejudice is insufficient. *Id.* ¶¶ 25, 29.

¶ 33    Pursuant to the cause-and-prejudice test, the petitioner must show good cause for failing to raise the claimed errors in a prior proceeding and actual prejudice resulting from the claimed errors. *Pitsonbarger*, 205 Ill. 2d at 460; 725 ILCS 5/122-1(f) (West 2010). "Cause" is defined as "any objective factor, external to the defense, which impeded the petitioner's ability to raise a specific claim at the initial post-conviction proceeding." *Pitsonbarger*, 205 Ill. 2d at 462; 725 ILCS 5/122-1(f) (West 2010). "Prejudice" is defined as an error so infectious to the proceedings that the resulting conviction violates due process. *Pitsonbarger*, 205 Ill. 2d at 464; 725 ILCS 5/122-1(f) (West 2010). A defendant must establish cause and prejudice as to each individual claim asserted in a successive postconviction petition to escape dismissal under *res judicata* and waiver principles. *Pitsonbarger*, 205 Ill. 2d at 463; 725 ILCS 5/122-1(f) (West 2010). We review the trial court's denial of a motion to file a successive postconviction petition *de novo*. *People v. LaPointe*, 365 Ill. App. 3d 914, 923 (2006).

¶ 34    Defendant argues that his allegation of physical coercion satisfies the prejudice prong of the cause-and-prejudice test because the use of a physically coerced confession as substantive evidence of guilt is never harmless error. In support of his argument, defendant cites to the recent Illinois Supreme Court decision in *People v. Wrice*, 2012 IL 111860.

¶ 35    In *Wrice*, the defendant sought leave to file a second successive postconviction petition challenging his convictions for rape and deviate sexual assault on the basis that newly discovered evidence supported his prior claim that his confession was the product of police torture and brutality. *Wrice*, 2012 IL 111860, ¶ 1.

¶ 36    Prior to trial, Wrice had filed a motion to suppress statements he made to police arguing that he had been tortured at Area 2. His motion to suppress was denied. The defendant was thereafter convicted of multiple crimes, which were affirmed on direct appeal. The defendant filed an initial postconviction petition in 1991 alleging abuse, but his petition was denied. The defendant also alleged abuse in his first successive postconviction petition that he had been denied leave to file in 2000. *People v. Wrice*, 406 Ill. App. 3d 43, 52-53 (2010).

¶ 37    Later, defendant sought leave to file a second successive petition, wherein he relied on the 2006 Report. That petition was also denied. On appeal, this court reversed and remanded for a third-stage evidentiary hearing, holding that the defendant had established cause and prejudice for a successive postconviction petition. *Wrice*, 406 Ill. App. 3d at 52. This court concluded that the defendant had established cause because, while he may have raised torture claims in previous proceedings, he could not have cited the 2006 Report as corroboration because the 2006 Report had not been released. This court similarly found that the defendant satisfied the prejudice prong of the test because " '[t]he use of a defendant's coerced confession as substantive evidence of his guilt is *never* harmless error.' (Emphasis added.) *People v. Wilson*, 116 Ill. 2d 29, 41 (1987)." *Wrice*, 406 Ill. App. 3d at 53. Specifically, we found that the defendant consistently claimed that he was tortured, his claims of being beaten were strikingly similar to those of other prisoners in Areas 2 and 3, the officers implicated by the defendant were identified in other allegations of torture and the defendant's allegations were consistent with the 2006 Report's findings of torture under the standard of proof beyond a reasonable doubt. *Wrice*, 406 Ill. App. 3d at 53 (citing *People v. Patterson*, 192 Ill. 2d 93 (2000)). Our supreme court granted the State's petition for leave to appeal. *Wrice*, 2012 IL

111860, ¶ 44.

¶ 38     On appeal to the supreme court, the State conceded that the defendant had satisfied the cause prong of the cause-and-prejudice test because the defendant had alleged and this court had found that the defendant could not have argued that the 2006 Report corroborated his claims of police torture in his prior postconviction petitions because the report was not released until 2006, after he filed his previous petitions. *Wrice*, 2012 IL 111860, ¶ 43. The State only challenged this court's determination that the defendant had satisfied the prejudice prong, arguing that the admission of a coerced confession was subject to harmless-error review and that the admission of the defendant's allegedly coerced confession was harmless beyond a reasonable doubt. *Id.* ¶ 49.

¶ 39     After a lengthy discussion of whether a harmless-error analysis should apply to coerced confessions, the court determined that its prior holding in *Wilson* was no longer constitutionally sound:

          "In light of *Fulminante*, the rule set forth in *Wilson*, that 'use of a defendant's coerced confession as substantive evidence of his guilt is never harmless error' (*Wilson*,116 Ill. 2d at 41), cannot stand as a matter of federal constitutional law. That said, we conclude that *Fulminante* does not mandate that we abandon the rule in its entirety. Rather, we may recast the rule as follows: use of a defendant's *physically* coerced confession as substantive evidence of his guilt is never harmless error." (Emphasis in original). *Id.* ¶ 71.

In so doing, the court held that a harmless-error analysis was inapplicable to defendant's postconviction claim that his confession was physically coerced by police officers at Area 2. Therefore, defendant had satisfied the prejudice prong and the court remanded the cause to the trial court for the appointment of postconviction counsel and second-stage postconviction proceedings. *Id.* ¶¶ 85, 90.

¶ 40     Defendant contends, like the defendant in *Wrice*, his physically coerced confession was used as substantive evidence of his guilt at trial. In addition, he has consistently claimed that he was tortured. His claim of being beaten and the manner in which the alleged beating occurred are strikingly similar to the physical abuse documented in the 2006 Report as to the time period, location, manner, method, participants and the role of the participants in securing coerced statements from other prisoners in Areas 2 and 3. Detectives O'Brien, Stehlik and now Detective McWeeny were identified by the defendant. These same detectives were also identified in other allegations of torture advanced by other prisoners in the 2006 Report, which found that torture occurred under the standard of proof beyond a reasonable doubt. Therefore, we agree with defendant that based on *Wrice*, he has established prejudice.

¶ 41     However, prejudice alone is not sufficient. Defendant must also establish cause: that is he must identify an objective factor, external to the defense, which impeded his ability to raise a specific claim at the initial postconviction proceeding. *Pitsonbarger*, 205 Ill. 2d at 462. Defendant argues that he has satisfied the cause prong. First, he claims that he recently identified Detective McWeeny as the unknown officer who stopped the beating and threatened him and this new evidence supports a new claim. Second, defendant contends

that, although he raised the issue that his confession was physically coerced by Detective O'Brien in his initial *pro se* petition, the proceedings on his petition were fundamentally deficient.

¶ 42    Defendant's explanation that he recently identified Detective McWeeny injects a significant fact into our resolution and analysis of whether he has established the cause prong of the test. Defendant has alleged an objective factor that impeded his ability to raise this claim in an earlier postconviction proceeding. Although he was not identified by name, Detective McWeeny's actions were asserted in defendant's first postconviction petition where he stated that an unknown officer stopped the beating, told defendant to cooperate or the beatings would continue, and rehearsed Gregory Reed's statement with him. Identification of the officer by name would have carried more weight than simply claiming an "unknown" detective participated in the physical abuse. Defendant has sufficiently pled a consistent claim of abuse at the hands of Detectives O'Brien and Stehlik, along with the intervention of a "good cop," McWeeny, who induced him to cooperate in order to terminate the beating. There is little doubt that the later identification, by name, of the "good cop" adds a significant detail that, when compared to the other similar abuse claims involving the same named officers, lends considerable corroborative weight to defendant's claim. Therefore, we find that defendant has established cause with respect to his claim.

¶ 43    Defendant acknowledges that he argued that his confession was physically coerced in his initial petition. Defendant urges that he has always contended that he was physically coerced into giving a statement at Area 3 in 1991. Nevertheless, defendant argues that his claim was never decided on its merits because the proceedings on his initial petition were fundamentally deficient in that the trial court erred in summarily dismissing the petition and postconviction appellate counsel was ineffective for failing to raise this issue on appeal. Specifically, defendant contends that he was denied the opportunity for his postconviction claims to be heard because postconviction appellate counsel failed to read the suppression hearing transcripts and the 2006 Report and then argued against defendant in a *Finley* motion, claiming falsely that Detectives O'Brien and Stehlik were not mentioned in the report and that there was not even an arguable link between defendant and the Burge torture scandal. Consequently, defendant argues, cause is established by the deficiency in the prior proceedings.

¶ 44    The State claims that defendant cannot now, for the first time, argue the inadequacy of prior postconviction appellate counsel because he did not raise this issue in the petition he filed in the circuit court. While the circuit court did not address the issue because it was not expounded upon, defendant clearly alleged ineffective assistance of counsel as an alternative basis on which relief could be granted. We acknowledge that we are holding defendant to a low pleading threshold here, but we do so in consideration of the most serious allegations of police misconduct raised by defendant. See *People v. Patterson*, 192 Ill. 2d 93, 139-45 (2000); *People v. King*, 192 Ill. 2d 189, 193-99 (2000); *People v. Cannon*, 293 Ill. App. 3d 634, 640 (1997) (courts reconsidering the voluntariness of alleged confessions that would otherwise be barred by *res judicata* in several cases due to the pervasive pattern of criminal conduct by police officers in Area 2).

¶ 45    In order to determine whether defendant can establish cause by arguing a deficiency in

the prior proceedings in this case, we must determine whether postconviction appellate counsel provided effective assistance. We turn to the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *People v. Haynes*, 192 Ill. 2d 437, 476 (2000). First, the defendant must show that appellate counsel's failure to raise the issue complained of was objectively unreasonable. *Haynes*, 192 Ill. 2d at 476. Second, the defendant must demonstrate that appellate counsel's decision not to raise the issue prejudiced defendant. *Haynes*, 192 Ill. 2d at 476. Appellate counsel is not, however, obligated to raise every issue on appeal. *People v. Easley*, 192 Ill. 2d 307, 329 (2000). Moreover, appellate counsel is not incompetent for failing to raise issues that, in his or her judgment, are without merit. *Easley*, 192 Ill. 2d at 329. In other words, if the underlying issue is without merit, defendant can suffer no prejudice from appellate counsel's failure to raise the issue. *Id.*

¶ 46    We can easily say that postconviction appellate counsel's failure to raise defendant's claims on appeal was unreasonable and that defendant suffered prejudice. Defendant filed a *pro se* petition in the circuit court again alleging that his confession was physically coerced. That petition was summarily dismissed. On appeal, postconviction appellate counsel sought leave to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), on the grounds that there was no link between the documented misconduct under Commander Burge and defendant's coercion claim that would change the outcome of the suppression hearing because Detective O'Brien was not referenced in the Burge report and defendant did not "show that any officer who was investigated for misconduct questioned him." Defendant responded to postconviction appellate counsel's *Finley* motion by stating that the 148 individual complaints of police brutality against officers in Areas 2 and 3 that were investigated were contained on a compact disc, which defendant could not obtain due to his imprisonment. Therefore, he was unable to attach detailed allegations of brutality by other suspects against Detective O'Brien and other detectives under Burge's command. Defendant stated that this explanation as to the absence of the missing evidence was explained in the *pro se* petition he filed in the circuit court. Notwithstanding, postconviction appellate counsel was granted leave to withdraw under *Finley* and the dismissal of defendant's petition was affirmed on appeal. *People v. Nicholas*, No. 1-08-0670 (unpublished order pursuant to Supreme Court Rule 23). Defendant has persuasively demonstrated that effective postconviction appellate representation would have established the 2006 Report referenced investigation of Detective O'Brien's physical misconduct and, like the defendant in *Wrice*, the failure to investigate and raise the specific claim on appeal resulted in prejudice to the defendant. Had counsel provided effective assistance, it is likely that defendant's first *pro se* petition would have been remanded for second-stage proceedings. For the sake of clarity, our finding that postconviction appellate counsel was ineffective is relevant to this case only as it establishes cause.

¶ 47    Defendant has established the requisite cause and prejudice necessary to escape dismissal of his claim that his confession was the result of physical coercion. Nicholas has consistently claimed his confession was the product of physical abuse which occurred during a period of time and under circumstances strikingly similar to those documented in the 2006 Report. However, he has not been afforded a review of his claim that others in similar circumstances have received. We find the interest of justice is best served by remanding this issue to the

circuit court for second-stage proceedings and the appointment of counsel.

¶ 48 Defendant also argues that he should have been granted leave to file his successive petition for postconviction relief because he alleged a freestanding claim of actual innocence based on the affidavit of Delbert Heard. Heard's affidavit, defendant claims, established his innocence because he contradicted the State's theory of the case and named Jennings as the shooter.

¶ 49 There are two bases on which the bar to successive postconviction petitions will be relaxed. The first basis for relaxing the bar is when a petitioner can establish cause and prejudice for the failure to raise the claim earlier. *Pitsonbarger*, 205 Ill. 2d at 459. The second basis by which the bar to successive postconviction proceedings may be relaxed is known as the "fundamental miscarriage of justice" exception. *Id.* In order to demonstrate a miscarriage of justice to excuse the application of the procedural bar, a petitioner must show actual innocence. *Id.* See also *People v. Ortiz*, 235 Ill. 2d 319 (2009) (acknowledging that leave to file a successive postconviction petition may be based on actual innocence alone). Under the "fundamental miscarriage of justice" exception, leave to file a successive postconviction petition should be denied only where it is clear, from a review of the successive petition and the documentation provided by the petitioner that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence. *People v. Edwards*, 2012 IL 111711, ¶ 24. In other words, leave to file should only be granted when the petitioner's supporting documentation raises the probability that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

¶ 50 Evidence is considered newly discovered when: "(1) it has been discovered since the trial; (2) it is of such a character that it could not have been discovered prior to the trial by the exercise of due diligence; (3) it is material to the issue but not merely cumulative; and (4) it is of such a conclusive character that it will probably change the result on retrial." *People v. Williams*, 295 Ill. App. 3d 456, 462 (1998) (citing *People v. Molstad*, 101 Ill. 2d 128, 134 (1984)). "Generally, evidence is not 'newly discovered' when it presents facts already known to the defendant at or prior to trial, though the source of the facts may have been unknown, unavailable, or uncooperative." *People v. Barnslater*, 373 Ill. App. 3d 512, 523-24 (2007).

¶ 51 In his affidavit, Heard stated that he overheard defendant talking about the shooting in the prison law library. Heard averred that he told defendant that in 1991, after the Bulls won the NBA Championship, he was driving with his friend to 65th and Wolcott to talk to a man named Michael Anderson. While sitting in the passenger seat of his friend's car at 65th and Wolcott, he saw two men on the corner of 66th Street shooting at each other. One of the men was dark complected and wearing dark clothing and he was about 5 feet 5 inches to 5 feet 6 inches tall and weighed about 135 pounds. He was shooting while running backwards down 65th and Wolcott until he ran into the play lot. He then leaned over the fence of the play lot and began shooting in the direction of the gunman on the corner. The gunman who was shooting over the fence in the play lot shot a little girl who was running in front of the play lot. When the shooting ended, Anderson stated that it was "David who just shot Tootoo."

¶ 52 Contrary to defendant's assertions, Heard has no personal knowledge of the identity of either of the two men doing the shooting. At best, his affidavit suggests that he heard Anderson, in an out-of-court statement, identify David Jennings as one of the shooters. Accordingly, the circuit court correctly ruled that Heard's affidavit is insufficient to relax the bar to allow defendant to proceed on this claim.

¶ 53                                    CONCLUSION

¶ 54 Based on the foregoing, we affirm the judgment of the circuit court with respect to defendant's actual innocence claim; we reverse the judgment of the circuit court that defendant failed to show cause and prejudice for failing to raise in a prior proceeding his claim that his confession was physically coerced and remand to the circuit court for second-stage proceedings and direct the circuit court to appoint counsel.

¶ 55 Affirmed in part and reversed in part; cause remanded with instructions.