2020 IL App (1st) 170905-U

FIFTH DIVISION
Order filed: January 17, 2020

No. 1-17-0905

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 94 CR 21169 |
| | ) | |
| REGINALD KELLEY, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The defendant's 100-year aggregate sentence for first degree murder and attempted first degree murder did not violate the eighth amendment prohibition on cruel and unusual punishment where the defendant was over the age of 18 and legally an adult at the time he committed the offenses. The 20-year-old defendant's sentence did not violate the Illinois proportionate penalties clause where the defendant was an active participant in the shooting, the trial court had an opportunity to consider mitigating factors, and no other special circumstances were present.

¶ 2     The defendant, Reginald Kelley, appeals the judgment of the circuit court of Cook County denying him leave to file a successive postconviction petition. On appeal, the defendant argues that he met the cause and prejudice test, because his 100-year sentence imposed for an offense committed when he was 20 years old is unconstitutional as applied to his unique circumstances and violates the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. For the reasons that follow, we hold that the defendant did not establish cause and prejudice required for leave to file his successive postconviction petition. Also, the trial court properly considered relevant factors before sentencing the defendant to a discretionary 100-year sentence. Accordingly, we affirm the judgment of the circuit court.

¶ 3     In 1994, the defendant was charged with, *inter alia,* first degree murder and attempted first degree murder. Following a bench trial, the trial court found the defendant guilty of first degree murder and attempted first degree murder and sentenced the defendant to an extended term of 80 years' incarceration for the murder and a consecutive term of 20 years' incarceration for the attempt.

¶ 4     The evidence presented at trial is adequately set forth in this court's opinion in *People v. Kelley*, 304 Ill. App. 3d 628 (1999). Accordingly, we set forth only those facts necessary for an understanding of this case. On July 25, 1994, at approximately 10:30 p.m., Ebony Collins, her father Ronnie Cole, and her three-year-old son, Kevin Taylor Jr. (K.T.). were in the front seat of a white Chevy Caprice. Collins' brother and a friend were riding in the back. As Collins was driving the group along Yates Boulevard near 75th Street, she stopped at a red light. The defendant was standing with a group of men on the corner approximately 25 feet away. Collins noticed the defendant staring at her car. The defendant and another man broke from the group and crossed in

front of Collins' car. When the light turned green Collins drove away. As she did, she heard someone say "Ain't that the motherfucking car right there?" The defendant "fiddled with his shirt" pulled a firearm from his waistband and fired at the car. Bullets shattered the back windshield striking Cole in the arm and shoulder and striking K.T. in the back of the head. K.T. died as a result of his injury.

¶ 5 A few days later, Collins accompanied a police officer to a funeral home, where a large group consisting primarily of young men had gathered. Collins identified the defendant and another man as being present at the shooting. The defendant was detained and later identified in a lineup.

¶ 6 After hearing all of the evidence and closing argument, the trial court found the defendant guilty of first degree murder and attempted first degree murder. Following a sentencing hearing, the trial court sentenced the defendant to an 80-year extended term sentence for first degree murder and a consecutive 20-year term for attempted first degree murder.

¶ 7 On direct appeal, the defendant argued that he had been denied the effective assistance of counsel and that his sentence was excessive. This court affirmed. See *Kelley*, 304 Ill. App 3d at 640.

¶ 8 In 1999, the defendant filed a petition for postconviction relief, contending his indictment was based on perjured testimony, and he was denied the effective assistance of trial and appellate counsel based on a failure to challenge the indictment. The circuit court dismissed the defendant's petition. On appeal, the defendant argued that his sentence was improper under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the State did not charge, or prove, that the murder victim

was under the age of 12. This court affirmed the judgment of the circuit court and held that the defendant's sentence was properly imposed. See *People v. Kelley*, 331 Ill. App. 3d 253, 260 (2002).

¶ 9    In 2003, the defendant filed a successive postconviction petition. In 2004, the circuit court summarily dismissed the petition. This court subsequently granted the defendant's motion for summary remand, and the petition was remanded for second-stage proceedings. Ultimately, the circuit court granted the State's motion to dismiss the defendant's petition. We affirmed the dismissal. *People v. Kelley*, No. 1-07-2152 (2009) (unpublished order under Supreme Court Rule 23).

¶ 10   On December 28, 2016, the defendant filed a motion for leave to file a successive petition for postconviction relief. The defendant alleged that his sentence violated the eighth amendment because he was given a *de facto* life sentence for an offense committed when he was only 20 years old, and that he was entitled to an opportunity to prove that "he belongs to the large population of juveniles, as here-young adults, not subject to natural life in prison without parole." The circuit court denied the defendant's motion finding that his petition did not establish cause or prejudice. This appeal followed.

¶ 11   The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a method by which persons under criminal sentence in this state can challenge their convictions on the basis that they were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. *People v. Tate*, 2012 IL 112214, ¶ 8. A postconviction action is not an appeal from the judgment of conviction, but, rather, a collateral attack on the trial court proceedings. *Id.* Accordingly, issues raised and decided on direct appeal are barred by *res judicata*. *Id.*

¶ 12    The Act contemplates filing only a single postconviction petition, and issues that could have been raised on direct appeal or in an original postconviction petition, but were not, are forfeited. *People v. Nicholas*, 2013 IL App (1st) 103202, ¶ 31. Successive postconviction petitions are allowed only when fundamental fairness so requires or when a defendant can establish cause and prejudice for failing to raise the issue during initial postconviction proceedings. See *id.* ¶ 32 (citing *People v. Lee*, 207 Ill. 2d 1, 4-5 (2003)); see also *People v. Wrice*, 2012 IL 111860, ¶ 48.

¶ 13    A defendant establishes cause by "identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2012). A defendant establishes prejudice by "demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2012). Both prongs of the cause-and-prejudice test must be satisfied in order for a defendant to prevail. *People v. Guerrero*, 2012 IL 112020, ¶ 15. We review *de novo* the question of whether a motion for leave to file a successive postconviction petition adequately sets forth cause and prejudice. See *Wrice*, 2012 IL 111860, ¶ 50. Further, we may affirm the denial of leave to file a successive postconviction petition on any ground appearing in the record. *People v. Handy*, 2019 IL App (1st) 170213, ¶ 27.

¶ 14    Our supreme court has held that "leave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35.

¶ 15 The defendant asserts that he made the requisite showings of (1) cause because the primary authority on which he relied, *Miller v. Alabama*, 567 U.S. 460 (2012), was not decided until 13 years after his first postconviction petition, and (2) prejudice because his 100-year *de facto* life sentence is so disproportionate that it violates both the eighth amendment and the Illinois proportionate penalties clause. We conclude that the circuit court did not err when it denied the defendant leave to file his successive postconviction petition because, even if the *Miller* decision represented a change in the law that provided cause for his failure to raise the issue earlier, the defendant cannot show prejudice as a result of his allegedly disproportionate sentence.

¶ 16 The defendant argues that we should interpret the eighth amendment prohibition on cruel and unusual punishment in light of the "evolving standards of decency that mark the progress of a maturing society." See *Atkins v. Virginia*, 536 U.S. 304, 311-312 (2002). In *Miller*, the Supreme Court held that mandatory life sentences without the possibility of parole were excessive when imposed on juvenile offenders, and that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. *Miller*, 567 U.S. at 489. The defendant urges us to apply similar reasoning to his discretionary 100-year sentence imposed for crimes committed when he was 20 years old. We decline to do so. This court has held that:

> "In Illinois, Miller's eighth amendment protection applies only to juveniles; natural life sentences for young adults have not been found to violate the eighth amendment. For purposes of challenging life sentences without parole, 'the [Supreme] Court drew a line at the age of 18 years old,' however arbitrary that line may be." *People v. Handy*, 2019 IL App (1st) 170213, ¶ 37 (quoting *People v. Herring*, 2018 IL App (1st) 152067, ¶ 103).

At 20 years old, the defendant clearly fell on the adult side of the line drawn by the Supreme Court. Accordingly, the eighth amendment would not have prevented the imposition of even a mandatory 100-year sentence. The defendant's discretionary sentence may constitute a *de facto* life sentence and may even be harsh, but it does not violate the eighth amendment.

¶ 17     Next, the defendant argues that, "under the particular circumstances at issue," his sentence violates the proportionate penalties clause of the Illinois constitution. There is some inconsistency about whether the proportionate penalties clause is coextensive with, or interpreted in lockstep with, the eighth amendment, and our conclusion that the defendant's sentence did not violate the eighth amendment does not automatically bar his proportionate penalties claim. See  *Handy*, 2019 IL App (1st) 170213, ¶ 38. (citing *People v. LaPointe*, 2018 IL App (2d) 160903, ¶¶ 51-53).

¶ 18     The defendant relies heavily on the case of *People v. House*, 2019 IL App (1st) 110580-B, in making his proportionate penalties clause argument. In *House,* the defendant was convicted, based on accountability, of two counts of first degree murder for two murders committed while he acted as a lookout. See *Id.* ¶ 19. The murder victims were "violated," executed as punishment for selling drugs on a corner where the right to sell drugs was in dispute between two factions of the same gang. *Id. ¶* 5. The defendant served as lookout when other gang members shot the victims repeatedly. *Id.* ¶ 14. The trial judge imposed a mandatory life sentence. *Id.* ¶ 19. On appeal, this court ultimately held that further proceedings were unnecessary and remanded the case for resentencing after concluding that the defendant's mandatory sentence violated the proportionate penalties clause and shocked "the moral sense of the community." *Id. ¶* 64. This court noted that the defendant was a young adult, aged 19 years and 2 months at the time of the crimes, did not have a history of violent crime, did not know his father, and attended high school through the

twelfth grade but did not graduate. *Id.* ¶ 63. This court also noted that the defendant participated in the offenses only as a lookout. *Id.* Ultimately, this court concluded that, in light of the circumstances, the defendant was entitled to a new sentencing hearing during which the trial court could consider the relevant mitigating factors and the defendant's arguments that he did not deserve a life sentence. *Id.* ¶ 65.

¶ 19    *House* extended *Miller* principles to young adults under the proportionate penalties clause based on special circumstances that are not present in the case before us. First, in *House*, the defendant merely acted as a lookout. Here, the defendant personally fired the shots which struck the victims, killing K.T.. Whether a defendant physically committed the offense is a significant consideration for courts tasked with deciding whether to extend the *Miller* principles to young adult defendants through the proportionate penalties clause. *Handy*, 2019 Il. App (1st) 170213, ¶ 40. Here, we cannot overlook the defendant's active participation in the murder. Second, another significant consideration in *House* was that the sentencing court could not consider any mitigating factors because of the mandatory nature of the sentence. Here, the sentencing court elected to impose an extended term sentence, but the sentence it imposed was a matter of discretion. Therefore, because the defendant was an adult, an active participant in the crimes, and received a discretionary sentence, he is not entitled to a new hearing for a more in-depth consideration of his youth under *House*. See *id.* ¶ 41.

¶ 20    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 21    Affirmed.