2020 IL App (1st) 182323-U

FIFTH DIVISION
Order filed: November 13, 2020

No. 1-18-2323

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County |
| v. | ) ) | No. 96 CR 28407 03 |
| LUIS MARTINEZ, | ) ) | Honorable James B. Linn, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Delort and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*: The judgment of the circuit court is reversed because it improperly denied the defendant's motion for leave to file a successive postconviction petition where he satisfied the cause and prejudice test.

¶ 2    The defendant, Luis Martinez, appeals from the denial of his *pro se* motion for leave to file his second successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(f) (West 2016)). The defendant argues that the circuit court erred in denying him leave to file his petition where he satisfied the cause and prejudice test. He also argues that the circuit court erred

in sentencing him to 50 years' imprisonment without first considering his capacity for rehabilitation as well as his youth and its attendant circumstance because he was 17 years old at the time that he committed the crime. For the reasons that follow, we reverse.

¶ 3    Following a jury trial, the defendant was convicted of first-degree murder stemming from the September 7, 1996 gang-related shooting that caused the death of Juan Guajardo. The evidence at trial was detailed in our prior Rule 23 Order (*People v. Martinez*, No. 1-98-0366 (1999)), but we briefly summarize relevant facts and procedural history to assist in the resolution of this appeal.

¶ 4    Prior to trial, the defendant filed a motion to suppress his statement to the police, alleging that he was physically and psychologically coerced into making that statement by law enforcement. He specifically alleged that members of the Chicago Police Department threatened him, swore at him, verbally abused him, struck him, and kicked him, thereby coercing him to admit his involvement in the shooting.

¶ 5    At the hearing on the motion to suppress, the defendant did not testify, and the State called two witnesses: Detective James O'Brien (one of the officers involved in the defendant's interrogation) and Assistant State's Attorney Joe Cataldo. Detective O'Brien denied swearing, verbally abusing, or engaging in any type of psychological coercion to obtain a confession from the defendant. He also denied that he or anyone in his presence struck or kicked the defendant. ASA Cataldo testified that he took a statement from the defendant on October 2, 1996, and that the defendant stated he had been treated fine. The defendant's signed statement stated the following: "Luis Martinez states that he is giving this statement freely and voluntarily, that no threats or promises have been made to him in exchange for this statement. Luis Martinez states he's been treated good by the police and the assistant state's attorney, Joe Cataldo." At the

conclusion of the hearing, the circuit court denied the motion, finding that there was no basis to suppress the statement and that it was given "freely and voluntarily without threat or compulsion."

¶ 6    During trial, the defendant's statement was published to the jury. In his statement, the defendant explained that on September 7, 1996, he and codefendants Angel Ramos, Danny Martin, and Israel Cobian were driving in Ramos's red Chevette with black doors when they saw rival gang members on a porch at 58th Street and California Avenue in Chicago. The defendant and Cobian exchanged gang signs with the rival gang members and Cobian suggested getting a gun to shoot them. The defendant protested and suggested beating them up instead, since they did not have a gun. However, they all eventually agreed to the shooting. Ramos then drove to the hiding place of the gun. Cobian retrieved the gun and Ramos drove back towards the porch where the rival gang, the Latin Kings, was located. Ramos turned off his lights and stopped in a nearby alley. Cobian exited the vehicle and approached the gangway with the gun, while the defendant stood watch for any approaching police officers. The defendant heard seven shots, after which he saw Cobian running back towards the vehicle claiming to have shot a man as well as a Chevrolet Blazer, thinking the rest of the Latin Kings were inside. Ramos then drove back to the gun's original hiding place, and Cobian exited the vehicle to return the gun.

¶ 7    Eyewitnesses, Gil and Cesar Guajardo, testified that at the time of the shooting, they were "partying" on Cesar's porch, located at 5758 South California Avenue in Chicago, when around 2:00 a.m., they noticed a red Chevette with a black door slowly drive past. The four occupants flashed anti-Latin King gang signs and yelled anti-Latin King slogans, which were returned by someone on the porch giving them the finger. The vehicle drove away, but then soon returned with its lights off in a nearby alley. Cesar went inside the house while the decedent left the porch and

began walking north. Cesar heard gunshots from inside the house and ran outside to see the decedent on the ground bleeding, but he did not see the shooter. According to Gil, he saw the defendant shoot the decedent but could not identify the other individual nearby. He chased both men through the gangway where they jumped a fence and drove away in the red vehicle. Gil identified the defendant in a lineup as the shooter and identified the defendant in court.

¶ 8     Officer Jeff Zlotkowski testified that Gil told him that he saw one person running through a gangway to a car containing three passengers. However, a stipulated police report reflected that Gil stated he could not see the shooter's face. Gil denied ever making this statement.

¶ 9     The defendant was arrested on October 2, 1996, and testified that he was interrogated by Detectives O'Brien and Joe Fine. After denying his involvement in the shooting, Detective Fine exited the room, leaving the defendant alone with Detective O'Brien for about 25-30 minutes while he was handcuffed to a wall. Detective O'Brien accused him of lying, and began slapping him in the mouth, hitting him the face, kicking him in the ribs, and punching him in the stomach. The beating ceased and his handcuffs were removed only when he agreed to confess to the story Detective O'Brien told him to tell. Detective O'Brien removed the handcuffs before Detective Fine returned to the room. The defendant testified that he gave the statement to ASA Cataldo because Detective O'Brien threatened him with worse treatment if he failed to confess. According to the defendant, Detective O'Brien left a red mark on his face after hitting him; however, photographs taken around the time the defendant gave his statement reveal no marks on his face. On cross-examination, the defendant admitted that he was given a medical examination when he arrived at the Cook County Jail on October 4, 1996, and that no marks were found on his face or body. He also admitted that he did not report that he had been beaten.

¶ 10    Detective O'Brien testified that he, along with Detective Fine, administered *Miranda* warnings and interrogated the defendant on October 2, 1996. According to Detective O'Brien, the defendant denied any involvement in the shooting, but later admitted his involvement once Detective O'Brien presented him with incriminating witness statements. Detectives Fine and O'Brien both denied handcuffing, mistreating, or telling the defendant what to say. ASA Cataldo testified that the defendant never complained to him about the officers' behavior and that the defendant stated that he was "treated good by the police."

¶ 11    After hearing all of the evidence, the jury found the defendant guilty of first degree murder. The defendant filed a motion for a new trial, alleging, *inter alia*, that the circuit court erred in failing to grant his motion to suppress his statement. The circuit court denied the motion and sentenced the defendant to 50 years' imprisonment.

¶ 12    The defendant filed a direct appeal, arguing that his sentence was excessive, and this court affirmed. *People v. Martinez*, No. 1-98-0366 (1999).

¶ 13    In 2000, the defendant filed a *pro se* postconviction petition, alleging, *inter alia*, that his counsel was ineffective for failing to attack the "inadmissible[,] involuntary[,] and coerced statement." In support of this argument, the defendant cited his trial testimony—that he was handcuffed to a wall at police headquarters while he was interrogated and assaulted by police officers. He specifically alleged that he was accused of lying, slapped in the face, punched, and kicked until he confessed. The circuit court summarily dismissed the petition. The defendant appealed and this court affirmed. *People v. Martinez*, No. 1-00-3052 (2002).

¶ 14    On January 23, 2006, the defendant filed his first successive *pro se* postconviction petition, arguing that the 1992 Criminal Code was unconstitutional and that the charging instrument

violated section 111-3 of the Code of Criminal Procedure (725 ILCS 5/111–5 (West 2004)). He also alleged that the instructions given to the jury on how it should consider eyewitness testimony were in error. The circuit court denied the defendant leave to file, reasoning that the petition was meritless. The defendant appealed the denial and this court affirmed, finding that, with respect to the jury instruction issue, the defendant failed the cause and prejudice test by neglecting to challenge the jury instruction in his initial postconviction petition. *People v. Martinez*, No. 1-06-1331 (2007).

¶ 15   In 2009, the defendant filed a section 2-1401 petition for relief from judgment (735 ILCS 5/2–1401 (West 2008)), arguing that the jury was improperly instructed on two theories of murder, thereby confusing the jury. He also argued that his conviction for two counts of first degree murder for a single act violates the one-act-one-crime rule. The circuit court dismissed the petition and the defendant appealed. On appeal, this court affirmed, but also corrected the mittimus to reflect the conviction of one count of first degree murder. *People v. Martinez*, No. 1-09-3402 (2011).

¶ 16   On February 14, 2018, the defendant filed his second successive postconviction petition, alleging that his statement was the result of coercion by Detective O'Brien. He attached six complaints from the July 2006 Report of Special State's Attorney Edward J. Egan (2006 Report), which he maintains corroborates his claim that his confession was coerced and documents Detective O'Brien's pattern of misbehavior when interrogating suspects. He argued that the 2006 Report demonstrates a pattern of excessive force by officers under Commander Jon Burge, including Detective O'Brien. He also argues that he filed a complaint with the Office of Professional Standards (OPS) in 1997 and that the complaints attached to his petition from the

2006 Report are similar to the complaint he filed. The circuit court denied the petition, and this appeal followed.

¶ 17 On appeal, the defendant argues that the circuit court erred when it denied him leave to file his second successive *pro se* postconviction petition, because his allegations of physical coercion satisfied the cause and prejudice test. The Act allows a defendant to collaterally attack a prior conviction and sentence where there was a substantial violation of his constitutional rights. *People v. Gosier*, 205 Ill. 2d 198, 203 (2001). The Act contemplates the filing of only one postconviction petition. *People v. Evans,* 186 Ill. 2d 83, 89 (1999); 725 ILCS 5/122-1(f) (West 2016). As a result, all issues decided on direct appeal or in an original postconviction petition are barred by the doctrine of *res judicata* and all issues that could have been raised on direct appeal or in an original postconviction petition, but were not, are forfeited. *People v. Blair*, 215 Ill. 2d 427, 443 (2005).

¶ 18 Successive postconviction petitions are only permitted when fundamental fairness so requires or when a defendant can establish cause and prejudice for his failure to raise the issue in an earlier proceeding. *People v. Lee,* 207 Ill. 2d 1, 4-5 (2003). Under the cause and prejudice test, the petitioner must show good cause for failing to raise the claimed errors in a prior proceeding and actual prejudice resulting from the claimed errors. *People v. Pitsonbarger*, 205 Ill. 2d 444, 460, (2002); 725 ILCS 5/122–1(f) (West 2016). "Cause" is defined as "any objective factor, external to the defense, which impeded the defendant's ability to raise a specific claim at the initial postconviction proceeding." *Pitsonbarger*, 205 Ill. 2d at 462; 725 ILCS 5/122-1(f) (West 2016). "Prejudice" is an error so infectious to the proceedings that the resulting conviction violates due process. *Pitsonbarger*, 205 Ill. 2d at 464; 725 ILCS 5/122-1(f) (West 2016). A defendant must establish cause and prejudice as to each individual claim asserted in a successive postconviction

petition to escape dismissal under *res judicata* and forfeiture principles. *Pitsonbarger*, 205 Ill. 2d at 463; 725 ILCS 5/122–1(f) (West 2016). We review the circuit court's denial of a motion to file a successive postconviction petition *de novo. People v. LaPointe*, 365 Ill. App. 3d 914, 923 (2006).

¶ 19    The defendant first contends that his allegation of physical coercion in his petition establishes "cause" under the cause and prejudice test. The State asserts that the defendant cannot establish "cause" for his failure to raise this argument sooner. We agree with the defendant.

¶ 20    In his February 14, 2018 petition, the defendant raised the argument that the 2006 Report of the Special State's Attorney significantly corroborates his physical coercion claims. Although the defendant raised claims of coercion in his motion to suppress, at trial, and in his initial 2000 postconviction petition, it would have been impossible for him to have raised the 2006 Report in his initial 2000 postconviction petition or in his successive petition in January 2006 because the Special State's Attorney did not release the Report until July 19, 2006. Therefore, we find that the defendant has satisfied the "cause" prong of the cause and prejudice test by identifying an objective factor that prevented him from raising the 2006 Report in an earlier postconviction proceeding— the release date of the 2006 Report. See *People v. Wrice*, 406 Ill. App. 3d 43, 52 (2010) (where "cause" was established when new documentation—Special State's Attorney's Report— became available and supported a previous claim of coercion).

¶ 21    Next, the defendant maintains that he established the "prejudice" prong of the cause and prejudice test. Again, "prejudice" is defined as an error so infectious to the proceedings that the resulting conviction violates due process. *Pitsonbarger,* 205 Ill. 2d at 464. The use of a physically coerced confession undermines truth seeking and renders a trial fundamentally unfair. *People v. Wrice*, 2012 IL 111860, ¶ 70.

¶ 22     Our supreme court has held that a defendant has presented sufficient evidence at the pleading stage to entitle him to a postconviction, evidentiary hearing when: (1) he has consistently claimed that he was tortured; (2) his claims are "strikingly similar" to other torture claims; (3) the officers who were allegedly involved in his torture are identified in other torture allegations; and (4) the defendant's allegations are consistent with OPS findings of systemic and methodical torture under Commander Jon Burge. See *People v. Patterson,* 192 Ill. 2d 93, 145 (2000).

¶ 23     In the present case: (1) the defendant consistently claimed, during his motion to suppress, during trial, in his initial postconviction petition and now in his second successive postconviction petition, that he was coerced into confessing; (2) the defendant's claims of physical coercion are strikingly similar to five of the six complaints he attached to his petition from the 2006 Report with many alleging, *inter alia*, that they were threatened, slapped, punched, kicked, or some other form of physical abuse; (3) the officer involved, Detective O'Brien, is identified in the other allegations of physical coercion; and (4) the defendant's allegations are consistent with OPS findings of systemic and methodical torture/coercion under Commander Burge, as well as consistent with allegations of torture/coercion by other prisoners in the 2006 Report, which found that torture occurred under a standard of proof beyond a reasonable doubt. See also *People v. Nicholas*, 2013 IL App (1st) 103202, ¶ 40 (where this court found "prejudice" under the cause and prejudice test when the defendant consistently claimed he was tortured/coerced; the alleged beating was strikingly similar to the physical abuse documented in the 2006 Report of the Special State's Attorney; and Detective O'Brien and three others were identified by the defendant and in other allegations of torture in the 2006 Report, which found torture occurred under the standard of proof beyond a reasonable doubt.)

¶ 24     Accordingly, we find that the defendant established the "prejudice" prong of the cause and prejudice test. Therefore, we reverse the denial of his motion for leave to file his second successive postconviction petition, we remand the cause to the circuit court for second-stage proceedings, and we direct the circuit court to appoint counsel.

¶ 25     Lastly, the defendant argues that his 50-year sentence is a *de facto* life sentence and the circuit court erred by failing to first consider his rehabilitation potential and his youth and its attendant circumstances prior to imposing sentence. The State argues that by failing to raise this issue in his petition, it is forfeited. We agree with the State.

¶ 26     Generally, arguments not raised in a petition cannot be argued for the first time on appeal. *People v. Jones*, 213 Ill. 2d 498, 505 (2004). The defendant relies, in part, on the ruling in *Miller v. Alabama*, 567 U.S. 460 (2012), to support his claim that his 50-year sentence is a *de facto* life sentence, is unconstitutional, and that there is "no procedural bar" to our review of this issue. However, we addressed this very issue in *People v. Merriweather*, 2017 IL App (4th) 150407, ¶ 18.   In *Merriweather*, a defendant who was 17 years old at the time he committed the offense raised, for the first time on appeal from a denial of a successive postconviction petition, that his sentence was an unconstitutional *de facto* life sentence. This court held that the *Merriweather* defendant's challenge to his sentence did not fall under the exception to the forfeiture rule and found that his challenge was forfeited because it is an as-applied constitutional challenge, which is subject to forfeiture if raised for the first time on appeal. *Id.* ¶ 18. Therefore, following our holding in *Merriweather*, we find that the defendant forfeited his challenge to his sentence by raising it for the first time on appeal.

¶ 27     While we recognize that our supreme court has, in the exercise of its supervisory authority,

the power to consider an issue raised for the first time on appeal, we cannot similarly act as we do not share the supervisory powers enjoyed by the supreme court. See *People v. Jones*, 213 Ill. 2d 498, 507 (2004).

¶ 28    Reversed and remanded with instructions.