2023 IL App (1st) 170218-B
No. 1-17-0218

FIRST DIVISION
February 21, 2023

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07 CR 11290 |
| | ) | |
| JONATHAN MIRANDA, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Stanley Sacks, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justices Hyman and C.A. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Jonathan Miranda appeals from an order of the circuit court of Cook County denying him leave to file a successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). He contends that the circuit court erred in denying him leave because he presented a colorable claim of actual innocence, and he established cause and prejudice as to his claim of ineffective assistance of trial counsel. We initially affirmed, finding that the evidence submitted in support of defendant's actual innocence claim was immaterial, not probative of defendant's innocence, cumulative, and not of a sufficiently conclusive character. We also concluded that defendant could not establish cause for failing to

raise his claim of ineffective assistance of trial counsel in his initial postconviction petition. See *People v. Miranda*, 2018 IL App (1st) 170218.

¶ 2 On September 30, 2020, our supreme court denied defendant's petition for leave to appeal, but entered a supervisory order directing us to vacate our judgment and to consider the effect of *People v. Robinson*, 2020 IL 123849, on the issue of whether defendant presented a colorable claim of actual innocence. See *People v. Miranda*, No. 123466 (Ill. Sept. 30, 2020). Upon reconsideration, we note that although *Robinson* provides clarification of one element of an actual innocence claim, it does not change our ultimate conclusion that defendant did not present a colorable claim of actual innocence. In addition, our determination regarding defendant's claim of ineffective assistance of trial counsel stands. Therefore, we affirm the circuit court's judgment.

¶ 3                                                  BACKGROUND

¶ 4 In 2007, defendant and his cousins, Jason and Wellington Jaramillo,[1] were charged by indictment with multiple counts of aggravated discharge of a firearm, home invasion, aggravated battery with a firearm, armed violence, aggravated battery, aggravated unlawful restraint, and aggravated unlawful use of a weapon.

¶ 5 On March 10, 2009, defendant and his cousins entered negotiated pleas of guilty to aggravated discharge of a firearm in exchange for the dismissal of the other charges and agreed prison terms of 10 years for defendant and 15 years for his cousins with the express understanding they would be eligible to receive day-for-day good-conduct credit. Before entering judgments of conviction and imposing sentences, the trial court admonished defendant and his cousins of their appeal rights in accordance with Illinois Supreme Court Rule 605(c)

---

[1]Jason and Wellington are not parties to this appeal.

(eff. Oct. 1, 2001). The trial court addressed defendant, commenting that he was "pretty lucky" because when his cousins "went into the house *** and shot that guy, they didn't kill him"; otherwise, he would be facing a minimum sentence of 35 years' imprisonment. The trial court then informed defendant and his cousins, *inter alia*, that before taking an appeal, and "within 30 days of today's date," they must each file a written motion asking that the judgment be vacated and for leave to withdraw the guilty plea stating the reasons for doing so. Defendant and his cousins acknowledged that they understood the trial court's admonishments.

¶ 6　　　Sometime thereafter, the trial court received a letter from defendant's mother saying that her son "was doing 85 percent" of his 10-year sentence to which he had agreed with the understanding that he would be eligible to receive day-for-day good-conduct credit. On June 4, 2009, 86 days after defendant and his cousins entered negotiated guilty pleas to aggravated discharge of a firearm, attorneys for defendant and his cousins appeared before the trial court and reformed the plea agreement so the parties, including the State, received the originally bargained-for benefits. Pursuant to this agreement, the trial court reduced defendant's sentence from "10 years contemplating he would do that 10 at 50 percent" to "70 months" at 85%. The trial court issued a corrected mittimus *nunc pro tunc* to March 10, 2009, the date of the negotiated guilty plea and the initial mittimus.

¶ 7　　　Twenty-eight days later, on July 2, 2009, defendant, represented by new attorneys, filed a motion to withdraw his plea of guilty and vacate judgment. After a hearing, the trial court granted the motion, reinstated the charges previously dismissed, and remanded defendant to the custody of the Cook County jail without bond.

¶ 8　　　Defendant proceeded to a jury trial in 2010. The jury found defendant guilty of home invasion and aggravated battery with a firearm. The trial court then sentenced defendant to

consecutive terms of 21- and 6-years' imprisonment, respectively. A full recitation of the evidence presented at trial can be found in our decision on direct appeal. See *People v. Miranda*, 2012 IL App (1st) 103360-U.

¶ 9    On direct appeal, we affirmed the judgment entered on defendant's convictions over his challenge to the sufficiency of the evidence and to the propriety of the State's rebuttal argument. *Miranda*, 2012 IL App (1st) 103360-U. As to the sufficiency of the evidence, we found there was sufficient evidence allowing a reasonable trier of fact to conclude that defendant had knowledge of his cousins' criminal purpose and acted with intention to aid his cousins in the commission of their offenses against Froylan Lopez, a known narcotics dealer. *Id.* ¶ 51. Specifically, we found sufficient evidence to support defendant's convictions under accountability principles despite defendant's trial testimony that he remained at home with his girlfriend, mother, and sister the *night before* the shooting and his brother's testimony that he, and not defendant, drove the Oldsmobile that narcotics surveillance officers observed circle Lopez's house. *Id.* ¶¶ 51-53. Defendant's undisputed presence as a getaway driver outside Lopez's house on the date in question, his flight with his cousins after they shot Lopez, and circumstantial evidence of defendant's *prior* knowledge of his cousins' criminal design established defendant's accountability for the home invasion and aggravated battery of Lopez with a firearm. *Id.* We noted that, although defendant testified at trial that he believed he was driving his cousins to a job interview, there was circumstantial evidence otherwise. *Id.* ¶ 52. For instance, the night before the shooting, police intercepted a call wherein Jason told Luis Diaz, who owed the victim money for drugs seized by police, that he and Wellington were going to pay their cousin $1000 "just to drive," and Jason mentioned that his cousin drove a small expensive car. *Id.* Coincidentally, defendant testified at trial that he drove his cousins to

Lopez's house in an Audi TT, which he described as a small sports coupe. *Id.* As to the propriety of the State's rebuttal argument, we noted that the prosecutor was entitled to comment on defendant's failure to call his girlfriend, mother, and sister to support an alibi defense because defendant injected their existence into the case, and we ultimately found the prosecutor's comments were reasonable inferences based on the evidence presented at trial and did not impermissibly shift the burden of proof onto defendant or deprive him of a fair trial and warrant reversal of his convictions. *Id.* ¶ 60.

¶ 10       In 2013, defendant filed a *pro se* postconviction petition seeking to vacate his jury convictions and sentences for home invasion and aggravated *battery* with a firearm, or alternatively to reinstate his 10-year sentence for aggravated *discharge* of a firearm under the original plea agreement. Defendant alleged in his petition that he received ineffective assistance of plea counsel, who misinformed him that if he pled guilty to aggravated discharge of a firearm, he would be sentenced to 10 years' imprisonment to be served at 50% and that "after all of [his] good time was accumulated, [he] would only serve 2½ to 3 years in jail." Defendant also alleged that trial counsel[2] was ineffective for failing to call "all of the witnesses who were available to testify" on his behalf, and "[t]his failure allowed the prosecution to argue to the jury in rebuttal that [he] had not presented witnesses to support [his] theory of the case."

¶ 11       The circuit court summarily dismissed the petition as frivolous and patently without merit in a written order. In rejecting defendant's assertion that plea counsel's actions started a "chain of events" that ended with a 27-year prison sentence, the circuit court found that the actual chain of events that led to defendant's 27-year imprisonment started with the home invasion

---

[2]Defendant was represented by attorney Joseph DiNatale during the plea proceedings and attorneys Mark Kusatzky and Gus Santana thereafter and during trial.

and shooting of Lopez and that he voluntarily chose to withdraw his plea of guilty and go to trial. In rejecting defendant's claim that trial counsel was ineffective for failing to call all of the witnesses available to testify on his behalf, the circuit court found that defendant failed to attach any affidavits from those witnesses or indicate what the substance of their testimony would be. The circuit court further found that the issue was barred by the doctrine of *res judicata* because it was previously decided against defendant on direct appeal.

¶ 12 We affirmed the summary dismissal of defendant's *pro se* petition, finding that the parties' conduct revested the trial court with jurisdiction to consider defendant's untimely motion to withdraw his guilty plea and that defendant failed to present an arguable claim that trial counsel was ineffective for failing to call his mother and sister as a witness to corroborate his defense where there were no supporting affidavits or an explanation for their absence. *People v. Miranda*, 2016 IL App (1st) 131551-U, ¶¶ 24-25, 27-29.

¶ 13 In 2015, defendant filed a *pro se* "Complaint for *Mandamus*," alleging that the circuit court judge who granted defendant's motion to withdraw his guilty plea and vacate judgment lacked jurisdiction to do so. The circuit court denied defendant leave to file the complaint for *mandamus*, and on appeal therefrom, we affirmed the denial of leave after granting appointed counsel leave to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *People v. Miranda*, No. 1-15-2583 (2017) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 14 On November 17, 2016, defendant, represented by attorney Richard Dvorak,[3] filed the subject motion for leave to file a successive postconviction petition, along with the proposed petition. In his motion, defendant asserted he could establish cause and prejudice to raise a

---

[3]Mr. Dvorak also represents defendant in this appeal.

claim of ineffective assistance of counsel because his initial postconviction petition was defective "due to misrepresentations made to him by his appellate counsel and that appellate counsel engaging in an impermissible 'ghost writing' of the petition, and that those defects were therefore not caused by [defendant], and that he was prejudiced due to the claims not being raised." Defendant also asserted he was excused from showing cause and prejudice in presenting claims of newly discovered evidence and actual innocence.

¶ 15 In his successive petition, defendant stated that he sought postconviction relief based on claims of ineffective assistance of trial counsel, newly discovered evidence, and actual innocence. Defendant acknowledged the requirement that he show cause for failing to raise the ineffective assistance of trial counsel claim in the initial postconviction petition and prejudice resulting therefrom. He argued "[b]ecause the [defendant]'s initial post-conviction counsel made representations that he could file the Petition as-is, rather than informing the [defendant] that he needed affidavits, the [defendant] was caused to file a defective initial Petition."

¶ 16 On the merits, defendant first argued that he was prejudiced by trial counsel's failure to call as witnesses Luis Madrid, Kayla Rincon, and Stephanie Araujo, considering the "available testimony discussed" in their supporting affidavits. Specifically, Madrid averred that on April 24, 2007, he accompanied Arthuro Miranda, defendant's younger brother, to his cousins' house in Berwyn, whereupon Arthuro agreed to drive his cousins to a friend's house in Melrose Park. There, Arthuro circled the block twice before Wellington walked around the house and reported that his friend was not answering his calls. Madrid further averred that he would have testified had defendant's attorneys asked him.

¶ 17 Defendant's sister, Rincon, averred that on April 24, 2007, defendant came home after work and stayed home the entire night. Rincon watched television in the kitchen with her

mother, defendant, and defendant's girlfriend, Araujo, until 10 p.m. when she went to bed. Rincon further averred that she took time off school to be present at the courthouse during defendant's trial because attorneys told her they expected to call her as a witness, but that did not happen.

¶ 18     Defendant's girlfriend, Araujo, averred that on April 24, 2007, she was with defendant at his house from 8 p.m. to midnight. She recalled that defendant's mother and sister were present, but she could not remember whether defendant's younger brother and his friend Madrid were present. Araujo further averred that she was available to testify at defendant's trial but was never asked to do so.

¶ 19     Defendant next contended that newly discovered evidence comprised of affidavits from his cousins, Jason and Wellington, showed that he is actually innocent, citing *People v. Williams*, 2012 IL App (1st) 111145, *abrogated on other grounds*, *People v. Davis*, 2014 IL 115595. The cousins averred in strikingly similar affidavits that on April 25, 2007, Wellington asked defendant to drive him and Jason to a job interview with a person who owned a landscaping business in Melrose Park, that Jason and Wellington were carrying firearms concealed in their pants or waistband, and that they never told defendant about their plan to commit a crime. The cousins acknowledged that the police intercepted a telephone call wherein Jason stated he and Wellington were going to recruit one of their cousins to be a getaway driver for $1000 but claimed that was a lie they told Diaz, who owed Lopez money for drugs that had been seized by police.

¶ 20     On January 6, 2017, the circuit court entered a written order denying defendant leave to file his successive postconviction petition. Regarding defendant's claim of actual innocence,

the circuit court found that the affidavits[4] of Jason and Wellington did not support a cognizable claim of actual innocence. The circuit court stated that "[w]hile their testimony constitutes newly discovered evidence based on their averments that they would have refused to testify due to fear of incriminating themselves, *People v. Molstad*, 101 Ill. 2d 128, 135 (1984), it does not satisfy the remaining elements necessary for a freestanding claim of actual innocence." The circuit court noted their proposed testimony was cumulative because defendant had testified about the facts set forth in his cousins' affidavits. The circuit court further noted the proposed testimony of defendant's cousins was not so conclusive that it would probably change the result on retrial because Jason and Wellington's allegation that they did not inform defendant about the crime before his involvement was insufficient to offer "the total vindication and exoneration necessary for an actual innocence claim since [defendant] was still present and involved in the crime under their version of the events."

¶ 21    Regarding defendant's claim that trial counsel was ineffective for failing to call his sister Rincon as a witness, the circuit court found the claim was barred by *res judicata* as it was dismissed as meritless in defendant's initial postconviction petition and the appellate court affirmed that decision on appeal (*Miranda*, 2016 IL App (1st) 131551-U). As to defendant's claim that trial counsel was ineffective for failing to call Madrid and Araujo, the circuit court found that defendant failed to demonstrate cause for his failure to raise the claim in his initial postconviction petition, noting in a footnote that defendant "attempts to argue that he received ineffective assistance of post-conviction counsel because counsel did not obtain necessary affidavits from the prospective witnesses. However, this argument is unavailing as there is no

---

[4]Defendant correctly points out that the circuit court also discussed the affidavits of Madrid, Araujo, and Rincon in the context of his actual innocence claim although those affidavits were submitted in support of his ineffective assistance of counsel claim.

constitutional right to effective assistance of post-conviction counsel." The circuit court also found that defendant failed to demonstrate prejudice because his underlying argument was meritless. The circuit court reasoned that defendant failed to show that trial counsel's performance was deficient with respect to Jason and Wellington because they averred that no amount of due diligence from counsel would have secured their testimony at defendant's trial. The circuit court added that defendant nevertheless failed to demonstrate prejudice resulting from trial counsel's failure to call Madrid, Rincon, Araujo, and defendant's cousins because their proposed testimony would not have changed the outcome.

¶ 22                                    ANALYSIS

¶ 23        On appeal, defendant first contends that the circuit court erred in denying him leave to file a successive postconviction petition because he presented a colorable claim of actual innocence. We review the denial of defendant's motion for leave to file a successive postconviction petition *de novo* (*People v. Bailey*, 2017 IL 121450, ¶ 13), and we may affirm that decision on any ground of record (*People v. Johnson*, 208 Ill. 2d 118, 129 (2003)).

¶ 24        The Act provides a statutory, collateral remedy to defendants who claim their constitutional rights were substantially violated at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21 (citing *People v. Eddmonds*, 143 Ill. 2d 501, 510 (1991)); *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994). For that reason, claims that could have been, but were not, raised on direct appeal are forfeited, and claims that were addressed on direct appeal are barred by *res judicata*. *People v. Viramontes*, 2017 IL App (1st) 160984, ¶ 59.

¶ 25        Successive postconviction petitions, like the one at bar, are disfavored under the Act. *People v. Jones*, 2017 IL App (1st) 123371, ¶ 41. However, the bar against successive petitions will be relaxed if defendant establishes "cause and prejudice" for the failure to raise a claim in

the initial postconviction petition (725 ILCS 5/122-1(f) (West 2016)) or actual innocence under the "fundamental miscarriage of justice" exception. *Edwards*, 2012 IL 111711, ¶¶ 22-23; *People v. Brown*, 2017 IL App (1st) 150132, ¶ 36. It is incumbent upon defendant to first obtain "leave of court" to institute a postconviction proceeding. *Edwards*, 2012 IL 111711, ¶ 24. In the context of an actual innocence claim, "leave of court should be denied only where it is clear, from a review of the successive petition and the documentation provided by the petitioner that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence." *Id.* Put another way, leave should be granted when defendant's supporting documentation raises the probability that " 'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' " *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

¶ 26        "Where, as here, a defendant's successive petition makes a claim of actual innocence, such a claim may only be considered if the evidence in support of the claim was newly discovered, material to the issue and not merely cumulative of other trial evidence, and of such a conclusive character that it probably would change the result on retrial." *Jones*, 2017 IL App (1st) 123371, ¶ 43. Newly discovered evidence refers to evidence discovered after trial that could not have been discovered sooner by defendant through due diligence. *Id.* On the other hand, evidence is not newly discovered "when it presents facts already known to a petitioner at or prior to trial, though the source of those facts may have been unknown, unavailable, or uncooperative." *Brown*, 2017 IL App (1st) 150132, ¶ 42. "Material evidence is relevant and probative of the defendant's innocence," whereas cumulative evidence adds nothing to what the jury already heard. *Jones*, 2017 IL App (1st) 123371, ¶ 43. Finally, conclusive evidence is the most important element of an actual innocence claim (see *People v. Washington*, 171 Ill. 2d 475,

489 (1996)), and this court " 'must be able to find that petitioner's new evidence is so conclusive that it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt.' " *People v. Williams*, 2016 IL App (1st) 133459, ¶ 52 (quoting *People v. Sanders*, 2016 IL 118123, ¶ 47).

¶ 27        In *Robinson*, although our supreme court agreed with the above-quoted standard for the conclusive-character element, it offered further guidance on how we are to apply this standard. The court explained that newly discovered evidence need not totally vindicate or exonerate the defendant. *Robinson*, 2020 IL 123849, ¶¶ 55-56. According to the *Robinson* court,

> "the new evidence supporting an actual innocence claim need not be entirely dispositive to be likely to alter the result on retrial. [Citation.] Rather, the conclusive-character element requires only that the petitioner present evidence that places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id.* ¶ 56.

"Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id.* ¶ 48.

¶ 28        Although we take note of the clarification given by our supreme court, we conclude that it does not affect our initial determination that defendant failed to state a colorable claim of actual innocence. As we previously concluded, the proposed testimony of the cousins, that they lied to Diaz about paying one of their cousins $1000 to be their getaway driver and did not reveal their criminal plan to defendant, is immaterial because such testimony is irrelevant and not probative of defendant's innocence under an accountability theory. Rather, the proposed testimony is cumulative because the jury heard defendant's testimony that he believed he was driving his cousins to a job interview and was not aware of their criminal plan. Defendant contends that the fact the cousins lied to Diaz about paying one of their cousins $1000 to be

their getaway driver could not be cumulative of evidence already presented, because such a fact could not be testified to or inferred from the testimony of anyone other than the cousins. We disagree. Defendant's denial that he believed he was driving his cousins to a job interview and was unaware of their criminal plan necessarily implies that any statement to the contrary, *i.e.*, that the cousins paid him $1000 to be their getaway driver, was false.

¶ 29    Because we conclude that the proposed testimony from the cousins would have been cumulative of evidence already presented at trial, defendant's claim of actual innocence must fail. Given that, we need not make a determination on the other two elements—whether the evidence was newly discovered and of a conclusive character. Accordingly, although we recognize that *Robinson* offered clarification of the standard to be applied to the conclusive-character element that was unavailable to us at the time of our initial determination, because we need not even reach the conclusive-character element, the decision in *Robinson* does not impact our ultimate determination on defendant's actual innocence claim. We hold that the circuit court did not err in denying defendant leave to file his successive postconviction actual innocence claim, because the proposed testimony of defendants' cousins was cumulative of the trial evidence.

¶ 30    Defendant next contends that he established cause and prejudice as to his claim of ineffective assistance. He argues cause for failing to raise the ineffectiveness of trial counsel in his initial postconviction petition based on the "ineffective assistance of post-conviction counsel." He faults the attorney who "ghost-wrote" his initial, *pro se* postconviction petition for failing to inform him that supporting affidavits were required to survive summary dismissal. He then argues prejudice resulting from trial counsel's failure to call Madrid,

Rincon, and Araujo, whose testimony would have weakened the inference that he knew all along about his cousins' criminal plan and actively participated in the furtherance thereof.

¶ 31    "Cause" refers to any objective factor that impeded a defendant's ability to raise a specific claim in the initial postconviction proceeding. *People v. Pitsonbarger*, 205 Ill. 2d 444, 462 (2002). "Prejudice" refers to an error that so infected the entire trial that the resulting conviction violates due process. *Davis*, 2014 IL 115595, ¶ 14; *People v. Flores*, 153 Ill. 2d 264, 279 (1992).

¶ 32    Here, defendant cannot establish cause for failing to raise the ineffective assistance of trial counsel in his initial, *pro se* petition, based on the alleged ineffective assistance of postconviction counsel because neither the Act, nor Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984), provides any basis for a standard of legal representation at the first stage of postconviction proceedings. *People v. Shipp*, 2015 IL App (2d) 131309, ¶ 16. We observe that "Rule 651 applies to counsel appointed or retained *after* a *pro se* petition, but not to counsel that was privately retained by the prisoner to file the initial petition," as in the case at bar. (Emphasis added.) *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 51 (citing *People v. Cotto*, 2016 IL 119006, ¶ 41). We also acknowledge defendant's reliance on *People v. Nicholas*, 2013 IL App (1st) 103202, and *People v. Warren*, 2016 IL App (1st) 090884-C, for the proposition that the deficient performance of postconviction appellate counsel may constitute cause. However, we remain unpersuaded as those cases concern counsel who represented the defendant on appeal from the summary dismissal of an initial, *pro se* postconviction petition, which is not the case here. We also find that defendant cannot demonstrate prejudice resulting from trial counsel's failure to call Madrid, Rincon, and Araujo, based on their supporting affidavits. The witnesses' proposed testimony involves the day before the shooting of Lopez

and, at best, suggests that defendant did not drive around Lopez's house the previous night. Under these circumstances, we cannot find the fact that trial counsel did not call these witnesses at trial constituted an error that so infected the entire trial that the resulting conviction violates due process. *Davis*, 2014 IL 115595, ¶ 14.

¶ 33                                                    CONCLUSION

¶ 34          For the reasons stated, we affirm the judgment of the circuit court of Cook County denying defendant leave of court to file his successive postconviction petition.

¶ 35          Having disposed of the substantive issues, our panel colleague, Justice Hyman, has called to our attention several format and style issues in the parties' briefs, which while not necessary for the analysis of the issues involved, remain a constant concern to this court.

¶ 36          We point out a few writing missteps in the parties' briefs involving Illinois Supreme Court Rule 341 (eff. Jan. 1, 2016). Because these lapses steadily pop up, we draw attention to them. Remember, full compliance with Rule 341 is not optional and has the added benefit of framing more readable, navigable, and comprehensible briefs.

¶ 37          Illinois Supreme Court Rule 341 (eff. Jan. 1, 2016) sets out the requirements for filing a brief on appeal. Rule 341 seeks to promote "clear and orderly arguments" so that the reviewing court may better discern and decide the issues. (Internal quotation marks omitted.) *Collier v. Avis Rent A Car System, Inc.*, 248 Ill. App. 3d 1088, 1095 (1993). Failure to substantially conform to appellate briefing rules can lead to dismissal. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7.

¶ 38          Some of the provisions of Rule 341 are quite specific. For instance, Rule 341(a) requires typeface of "12-point or larger throughout the document, including quoted material and any footnotes." Ill. S. Ct. R. 341(a) (eff. Jan. 1, 2016). On page 10 of defendants's brief appears a

footnote in a typeface that is smaller than the typeface in the body of the brief. This slight deviation from the rules does not warrant striking the brief; we would advise lawyers to strictly comply with the typeface rule. There is a practical reason to do so—a good number of appellate judges have arrived at an age when they cannot read type smaller than 12-point without the need for squinting or reaching for their reading glasses.

¶ 39      Other provisions of Rule 341 are more advisory. For example, Rule 341(a) wisely discourages, but does not prohibit, footnotes. It also permits quotations of two or more lines to be single-spaced but advises that "lengthy quotations are not favored and should be included only where they will aid the court's comprehension of the argument." Ill. S. Ct. R. 341(a) (eff. Jan. 1, 2016).

¶ 40      Here, the "Statement of Facts" section of the State's brief includes a summary of the trial court proceedings taken verbatim from an unpublished Rule 23 order ruling on the direct appeal. The quoted material consists of 10 continuous single-spaced pages. Although this does not technically violate Rule 341, it regurgitates an available order, which could have been attached to an appendix for easy reference and the relevant paragraphs simply cited. Ten pages of thick type make for grim reading. Also, the multiple single-spaced pages squeezed into 40 pages when if double-spaced, would have exceeded the 50-page limit in Illinois Supreme Court Rule 341(b)(1) (eff. Jan. 1, 2016)). Although we are not suggesting this was intentional, courts take umbrage at efforts to skirt rules.

¶ 41      *Later in the "Argument" section of the brief, the State again inserts single-spaced block quotes from our earlier unpublished order, with several lines in boldface type for emphasis. While Rule 341 does not prohibit the use of bold type, we recommend that it be reserved for headings and nothing else. Even boldface headings of over two lines lose their impact and are*

*hard to read, not to mention annoying. Instead, stick with italics. And, by the way, never ever*

*underline bold type; it is akin to shouting and considered rude.*

¶ 42       Every appellate lawyer should want to present the legal issues and arguments accurately, concisely, and persuasively. A way to self-sabotage that goal is to disregard both the letter and the purpose of Rule 341.

¶ 43       Affirmed.

***People v. Miranda*, 2023 IL App (1st) 170218-B**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 07-CR-11290; the Hon. Stanley Sacks, Judge, presiding. |
| **Attorneys for Appellant:** | Richard Dvorak and Christopher A. Tinsley, of Dvorak Law Offices, LLC, of Clarendon Hills, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Douglas P. Harvath, and Miles J. Keleher, Assistant State's Attorneys, of counsel), for the People. |