2024 IL App (1st) 232223-U

No. 1-23-2223

Order filed December 17, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, |
| | ) | |
| v. | ) | No. 02 CR 27715 |
| | ) | |
| LESHAWN WALKER, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*: Circuit court's order denying defendant leave to file a second successive postconviction petition is affirmed where defendant did not raise a claim of actual innocence based on newly-discovered evidence.

¶ 2    Defendant Leshawn (or LeShaun) Walker appeals from an order of the circuit court denying him leave to file a second successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). He contends that the court erred in denying him leave to file because he stated a claim of actual innocence based on newly-discovered evidence. We affirm.

¶ 3 Following a 2003 jury trial, defendant was convicted of first degree murder and sentenced to 55 years' imprisonment. We affirmed on direct appeal. *People v. Walker*, No. 1-04-0275 (2006) (unpublished order under Supreme Court Rule 23).

¶ 4 Defendant was charged with the first degree murder of Lashawn Randolph and attempted first degree murder of Delwin Hayes by personal discharge of a firearm on or about June 18, 2002. As we summarized the trial evidence in our direct appeal order, we recite only the portions relevant to this appeal. Generally, the State's eyewitnesses – Hayes, Randolph's girlfriend Ebonnie Scott, Rogers Britton, and DeMoyne Blakemore – gave a consistent account of the events of June 18, 2002, while the defense witnesses – defendant, his girlfriend Tamara Rose, and Victor Worthy – gave another.

¶ 5 The State's account was that Randolph, Hayes, Britton, Blakemore, and others (the group) were in front of Hayes's home when defendant and Worthy repeatedly rode past slowly. The group walked to Randolph and Scott's home. There, defendant and Worthy rode past again and, a short time later, walked up to the group. Hayes and Worthy argued. Worthy accused Randolph of previously shooting at him and defendant. The argument led to a brawl between Hayes and Worthy, during which defendant shot Randolph in the back of the head and then fired more shots into the fallen Randolph. Before leaving, defendant shot Hayes in the stomach. None of the State's witness saw Randolph with a firearm.

¶ 6 Randolph's autopsy showed five gunshot wounds: four running "from back to front," including two to the back of his head, and the fifth a graze to the side of his knee. Defendant gave a post-arrest statement that (1) Randolph and other men shot at defendant and Worthy in March 2002, and (2) in June 2022, as defendant and Worthy fought "some of the guys with" Randolph, defendant shot Randolph as he turned, though defendant did not see him with a weapon.

¶ 7    For the defense, defendant and Worthy testified that Randolph and others shot at them in March 2002. Worthy testified that, on June 18, 2002, he saw Randolph standing with others in front of a home and, a short time later, near another home. Randolph and his group argued with Worthy and defendant, during which Randolph went into his home and exited with a firearm. Worthy was about to run but Hayes and others jumped on him. They were beating him when he heard gunshots, then "everybody" fled. Rose testified that she saw Randolph come outside and draw a firearm, then heard shots as she ran away.

¶ 8    Defendant testified that, as Worthy fought with Hayes and Blakemore, Randolph walked towards the crowd and drew a firearm. Defendant drew his own weapon and, when he saw Randolph's firearm was pointed at him, fired at Randolph. Upon being shot, Randolph spun around, dropped his firearm, and fell to the ground. Hayes ran towards the firearm to pick it up, so defendant shot Hayes, then fled. Defendant acknowledged hearing that Randolph was shot in the back of the head but maintained that he shot Randolph face-to-face.

¶ 9    The jury was instructed on self-defense and second degree murder. It found defendant guilty of first degree murder by personally discharging a firearm and not guilty of attempted murder. The trial court sentenced him to 55 years' imprisonment, including a 25-year firearm enhancement.

¶ 10   On direct appeal, defendant raised claims of ineffective assistance of trial counsel and challenges to his enhanced sentence. *Walker*, No. 1-04-0275, at 1-2. In relevant part, he claimed ineffectiveness based on counsel's failure to call the police officers who arrested Randolph for the March 2002 shooting incident. *Id.* at 14-17. In finding counsel was not ineffective, we noted that the "officers would not have been able to testify that Randolph shot at defendant" but only "that they arrested Randolph for firing a weapon." *Id.* at 16. Whether Randolph shot at defendant in

March 2002 was "not determinative" of his claim that he acted in self-defense on June 18, 2002. *Id.* at 17.

¶ 11 In 2007, defendant filed a postconviction petition under the Act, alleging ineffective assistance of trial counsel for stipulating to the testimony of the physician who performed Randolph's autopsy. The circuit court summarily dismissed the petition, and we affirmed. *People v. Walker*, No. 1-08-0316 (2009) (summary order under Supreme Court Rule 23(c)).

¶ 12 In 2015, defendant filed a successive postconviction petition claiming newly-discovered evidence of actual innocence from Jeffie Freeman and Drexel Ellis. Freeman averred that he saw Randolph walking towards defendant with a firearm in hand. Freeman then fled and heard gunshots. He also averred that Randolph shot into Freeman's home a few days before Randolph's death. Ellis gave a statement that Randolph went into his home, came out with a firearm, and shot at defendant before defendant shot him.

¶ 13 The circuit court denied the petition in 2016 and we affirmed, finding that defendant did not present newly-discovered evidence of actual innocence. *People v. Walker*, 2018 IL App (1st) 160507-U, ¶ 2. In doing so, this court stated, the "primary *evidence* or factual proposition defendant seeks to introduce – during the fight, Randolph went into his home and returned with a gun, and thus Randolph was armed when defendant shot him – was not only known to defendant at trial but placed before the jury by the testimony of himself, Worthy, and Rose. Only the new *sources* of this evidence, Freeman and Ellis, were unknown, unavailable, or uncooperative." (Emphases in original.) *Id.* ¶ 14. Also, the "new" evidence was not conclusive as it did not place the trial evidence in a new light or undermine our confidence in the verdict. *Id.* ¶ 15. Freeman averred, as Worthy and Rose had already testified, to seeing Randolph armed and hearing, but not seeing, the gunshots being fired. *Id.* Ellis's statement that Randolph fired was contrary to

defendant's testimony that he fired at Randolph as Randolph was raising his weapon toward him. *Id.*

¶ 14    In February 2023, defendant filed the motion for leave to file a second successive postconviction petition now at issue. He alleged trial counsel was ineffective for not presenting evidence, including police testimony, that Randolph was arrested for the March 2002 shooting. Primarily, defendant claimed actual innocence based on newly-discovered evidence in the form of attached affidavits from Darry Toney, Samuel Randolph, Celester Edwards, and Kenneth Dorsey.[1]

¶ 15    Toney averred that, on June 18, 2002, he saw Randolph and others approach defendant and Worthy and a fight break out. Toney saw Randolph approach defendant while pointing a firearm at him, then defendant shot Randolph. Toney fled the scene until the shooting stopped, then returned, picked up the firearm next to Randolph, and left.

¶ 16    Samuel averred that, in March 2002, he saw Scott's car drive past with two men in the front and LaShawn Randolph in the back. "[T]wo guys" exited the car and shot at defendant and Worthy. On June 18, 2002, Samuel saw Randolph, Hayes, and five other men approach defendant and Worthy on the street. Samuel heard gunshots "about 10 minutes later." After the shooting ended, Samuel went to the scene and saw "this guy" pick up a firearm next to Randolph and walk away. Samuel believed many people saw "that guy pick that up."

¶ 17    Edwards averred that, on June 18, 2002, he saw "a crowd of people yelling and fighting." He then saw Randolph come out of a house with a firearm in hand, approach the crowd, and point the firearm at defendant, who drew his own firearm. Edwards took cover, heard four or five

---

[1] We refer to Samuel Randolph as Samuel to avoid confusion with decedent Randolph. Neither the proposed petition nor Samuel's affidavit addresses whether Samuel was related to the decedent.

gunshots, and returned to see Randolph's body on the ground. "Someone" ran off with the firearm that was next to the body.

¶ 18    Dorsey averred that, in March 2002, he saw Scott's car stop with "Boo and C.G." in front and Randolph in back. Randolph handed a firearm to Boo and C.G., who exited the car and shot defendant and Worthy. About two weeks later, Randolph told Dorsey he would "get rid of" defendant, then showed Dorsey two pistols. On June 18, 2002, Dorsey heard the gunshots and saw Toney pick up a firearm near Randolph's body and walk away with it.

¶ 19    On February 22, 2023, the circuit court denied defendant leave to file the second successive petition, finding the proposed petition was without merit and cumulative.

¶ 20    On appeal, defendant contends that the circuit court erred in denying him leave to file a second successive postconviction petition that presented newly-discovered evidence of actual innocence.

¶ 21    Generally, a defendant may file only one postconviction petition under the Act without leave of the court, which may be granted if the defendant shows an objective cause for not previously raising the claims of the proposed petition and prejudice from not raising them. 725 ILCS 5/122-1(f) (West 2022). Another basis for granting leave to file a successive petition is that the proposed petition raises a claim of actual innocence. *People v. Griffin*, 2024 IL 128587, ¶ 33. Well-pled factual allegations in a postconviction petition and supporting documentation must be taken as true unless positively rebutted by the record. *Id.* ¶¶ 40, 55. Our review of the denial of leave to file a successive petition is *de novo*. *Id.* ¶ 33.

¶ 22    For a claim of actual innocence, a defendant must present new, material, non-cumulative evidence that is so conclusive it would probably change the result in a retrial. *Id.* ¶ 35. Evidence is new if it was discovered after trial and could not have been discovered earlier by exercising due

diligence, material if it is relevant and probative of the defendant's innocence, and non-cumulative if it adds to the evidence heard at trial. *Id.* Evidence is not newly discovered when it presents facts already known to the defendant at trial, even if the source of those facts was unknown, unavailable, or uncooperative. *People v. Miranda*, 2023 IL App (1st) 170218-B, ¶ 26. To be conclusive, a defendant's new evidence must raise the probability that it is more likely than not that no reasonable trier of fact would find him guilty beyond a reasonable doubt. *Griffin*, 2024 IL 128587, ¶ 45. In other words, the new evidence must place the trial evidence in a different light and undermine the court's confidence in the factual correctness of the guilty verdict. *People v. Beard*, 2023 IL App (1st) 200106, ¶ 38.

¶ 23    Here, defendant claims that his proposed petition presented newly-discovered evidence of actual innocence because the affidavits show that Randolph brandished a firearm before defendant shot him, which supports that he shot in self-defense. However, defendant's proposed petition has the same flaw as his previous proposed successive petition. Namely, the primary evidence or factual proposition defendant seeks to introduce – that Randolph was pointing a firearm at him when he shot Randolph – was not only known to defendant at trial but placed before the jury by his testimony, corroborated in part by the testimony of Worthy and Rose that they saw Randolph holding a firearm before they heard gunshots. Therefore, this evidence is not newly discovered. Rather, only the new *sources* of this evidence were unknown, unavailable, or uncooperative. See *Miranda*, 2023 IL App (1st) 170218-B, ¶ 26.

¶ 24    Moreover, we find the affidavits at issue are not conclusive because they do not place the trial evidence in a new light nor undermine our confidence in the verdict. *Beard*, 2023 IL App (1st) 200106, ¶ 38. In addition to seeing Randolph holding a firearm, Toney and Edwards aver that they saw Randolph point a firearm at defendant, while all four affidavits state that a firearm was on the

ground next to Randolph before someone took it. However, the affidavits do not undermine our confidence in the verdict when the autopsy showing that Randolph was shot in the back fundamentally contradicts defendant's testimony that he shot Randolph face-to-face as Randolph pointed a firearm at him. Positing a trial with the existing trial evidence and the affiants testifying consistently with their affidavits, we do not find it more likely than not that no reasonable trier of fact would find defendant not guilty beyond a reasonable doubt. Given that the evidence was not newly discovered nor so conclusive it would probably change the result in a retrial, defendant failed to raise a valid claim of actual innocence. The circuit court did not err in denying him leave to file the second successive petition.

¶ 25    Accordingly, the judgment of the circuit court is affirmed.

¶ 26    Affirmed.